UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-21431-LENARD/TURNOFF

LEONARD SIMKOVITZ,                              :

               Plaintiff,                  :

v.

                          :

JETRAN INTERNATIONAL, LTD.,  et al

                          :

               Defendants.

_____:

### AFFIDAVIT OF CARL H. HOFFMAN

COUNTY OF MIAMI-DADE  )
                          ) SS
STATE OF FLORIDA          )

BEFORE ME, the undersigned authority, personally appeared Carl H. Hoffman, who, upon his oath, deposes and says:

1.      I am the attorney for the plaintiff in the above-entitled action.

2.      I have personal knowledge of all of the facts set forth in this affidavit.

3.      This affidavit is submitted in opposition to Defendants' Motion for Summary Judgment dated January 14, 2011 (Doc. # 51).

4.      In or about early October, 2009, I was contacted by Leonard Simkovitz concerning his claim against Jetran International, Ltd., ("Jetran"), for a commission due to him from  the sale of a certain Boeing 707-368C aircraft, Registration Number N707MQ, Manufacturer's Serial Number 21368 ("21368"). At that time, Mr. Simkovitz gave me a copy of an agreement dated June 23, 2003, which pertained to his claim for a commission on 21368

("Commission Agreement"). See DE027,[1] Exhibit "A" hereto.

5.    The Commission Agreement provides for a commission of 3% to be paid to Mr. Simkovitz immediately upon the sale of the aircraft (21368), engines and related parts. *Id.*

6.    I researched the aircraft chain of title for 21368 and determined that Jetran had purchased 21368 from Saudi Arabian Airlines on May 7, 2003, and, on the same day, had conveyed it to Jetran's Trustee, Alameda Corporation, ("Alameda"). A copy of the Bill of Sale from Jetran to Alameda is attached as Exhibit "B" hereto (see also DE019). I further determined that Alameda had sold 21368 to Omega Air, Inc., ("Omega") on June 2, 2005.  A copy of the Bill of Sale from Alameda to Omega is attached as Exhibit "C" hereto (see also DE020).

7.    I further determined that Jetran's initial conveyance to its trustee, Alameda, was not a "sale" of the aircraft which would qualify for a commission but was rather a transfer to a trustee for title purposes.  However, upon further research, I determined that the later sale to Omega was a conveyance for which Mr. Simkovitz was entitled to a commission.  However, because the FAA records did not reflect the actual consideration for the sale, I had no definite information upon which to calculate the amount of the commission due.

8.    On November 30, 2009, I sent a letter by Certified Mail to M.D. Jaffe, Jr., as CEO of Jetran, requesting documentary evidence of the sales price. See Exhibit "D" hereto. However, I received no response of any kind.

9.    On December 21, 2009, I sent a second letter by Certified Mail to M.D. Jaffe, Jr., as CEO of Jetran, in which I referenced my letter of November 30, 2009, and indicated that I would be left no alternative but to bring suit if the requested information was not forthcoming. See Exhibit "E" hereto. Again, I received no response of any kind.

---

[1]  "DE" followed by three digits refers to a numbered deposition exhibit. For example, DE027 refers to Deposition Exhibit # 27.

10.   Having received no response to my letters, I filed this action on May 3, 2010. A copy of the complaint is attached as Exhibit "F" hereto.

11.   On June 10, 2010, defendants filed their Answer, Affirmative Defenses and Counterclaim in this action. See Exhibit "G" hereto. However, neither the Answer nor the Affirmative Defenses nor the Counterclaim (which was later dismissed) contained any reference to the alleged "swap" which defendants have now raised in their Motion for Summary Judgment as an avoidance to plaintiff's Complaint. *Id.*

12.   Defendants' present claim that Jetran had reached an agreement with Omega to "swap" 21368 for a different Boeing 707, to wit, FAA Registration Number 707LG, Manufacturer's Serial Number 21092, ("21092") does not include all of the provisions of the parties' agreement, as set forth in the "swap" agreement. See Exhibit "H" hereto. First, the "swap" of 21368 for 21092 is only part of the agreement. The agreement also provides that 21092 and another Boeing 707, Manufacturer's Serial Number 20919, ("20919"), would be held in storage in order to offer both aircraft, i.e., 21092 and 20919, for sale to the Government of Israel ("GOI"). Regardless of which aircraft may be sold to GOI, Jetran and Omega would share equally in the proceeds. *Id.*

13.   According to a proposal to GOI produced by Jetran, DE022, Exhibit "I" hereto, the lease value of 21368 is $105,000 per month on a 24 month lease plus a purchase option of $6,000,000 after 24 months or $4,000,000 after 48 months. *Id.*. Consequently, the potential cash generated for Jetran by the GOI transaction, would be $8,520,000 after 24 months (24 x $105,000 = $2,520,000 + $6,000,000), or $9,040,000 after 48 months (48 x $105,000 = $5,040,000 + $4,000,000).

14.   I am aware of no testimony or documentary evidence stating that Jetran had

difficulty selling 21368.

FURTHER AFFIANT SAYETH NAUGHT.

_____

Carl H. Hoffman

The foregoing instrument, consisting of six pages, including this page, was acknowledged before me this ___28___ day of January, 2011, by CARL H. HOFFMAN, who personally appeared before me at the time of notarization, and who is personally known to me or who has produced _____ as identification and who did/did not take an oath.

NOTARY PUBLIC:

Sign _____
Print _____

State of Florida at Large

Commission Number _DD 990426_

My Commission Expires:   05/10/14



Denise Melo
COMMISSION # DD990426
EXPIRES: MAY 10, 2014
WWW.AARONNOTARY.com

JETRAN International, Ltd

June 23, 2003

Leonard Simkovitz
Jetran International, Ltd
Miami. Florida.

RE: Sale Aircraft B 707-368C, MSN 21368     related engines and parts.

Leonard                        three (3%)

Pursuant to our telephone conversation dated June 19, 2003, this letter will confirm our agreement wherein you will be paid a ~~five~~ ( ¾) percent commission, paid immediately upon the sale of the above referenced aircraft, engines and related parts, for your efforts and intervention in the negotiation, whether the aircraft, engines and related parts are owned by Jetran International, Ltd. Or whomever Jetran assigns its ownership rights to subject aircraft, engines and parts. This commission is in addition to your current salary and other compensation and it relates solely to the above referred aircraft, engines and parts and commission shall be paid to you regardless of whoever is responsible for the subsequent sale of the aircraft, engines and parts and regardless of any commissions, if any, paid to third parties.

Best regards

By : _____
Jetran International LLC, Its General Partner

By: _____
M.D. Jaffe. Jr. C.E.O.


DEPOSITION
EXHIBIT
27


EXHIBIT
A

0 0 0 0 0 0 0 2 3 9 7

2A289110

FORM APPROVED
OMB NO. 2120-0042

UNITED STATES OF AMERICA
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

**AIRCRAFT BILL OF SALE**

FOR AND IN CONSIDERATION OF $ 1 & OVC THE UNDERSIGNED OWNER(S) OF THE FULL LEGAL AND BENEFICIAL TITLE OF THE AIRCRAFT DESCRIBED AS FOLLOWS:

UNITED STATES REGISTRATION NUMBER  N 707 M Q

AIRCRAFT MANUFACTURER & MODEL  Boeing 707-368

AIRCRAFT SERIAL No.  21368

DOES THIS  7th  DAY OF May 2003xg HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN AND TO SUCH AIRCRAFT UNTO:

CONVEYANCE
RECORDED

2003 JUN 25  AM 9. 15

FEDERAL AVIATION
ADMINISTRATION

Do Not Write in This Block
FOR FAA USE ONLY

**PURCHASER**

NAME AND ADDRESS
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

Alameda Corporation, Owner-Trustee under Trust
Agreement dated as of March 27, 2002, as supplemented
c/o Jetran
12400 Hwy. 281 N.
Suite 150
San Antonio, Texas  78216

DEALER CERTIFICATE NUMBER

AND TO  its successors CHECK(NO, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF  I  HAVE SET  my  HAND AND SEAL THIS  7  DAY OF  May  2003.

**SELLER**

NAME (S) OF SELLER
(TYPED OR PRINTED)

SIGNATURE (S)
(IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN.)

TITLE
(TYPED OR PRINTED)

Jetran International, Ltd.
By:  Jetran, LLC Its General Partner



CEO/Manager

M D Jaffe, Jr.

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING; HOWEVER, MAY BE REQUIRED BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

**ORIGINAL: TO FAA**

AC Form 8050-2 (8/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

Orig recd M&T

**CERTIFIED COPY**
TO BE RECORDED BY FAA



EXHIBIT

B

PENGAD 800-631-6989

D 0 0 1 8 8 6

FORM APPROVED
OMB NO. 2120-0042

**UNITED STATES OF AMERICA**
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

**AIRCRAFT BILL OF SALE**

CERTIFIED COPY
TO BE RECORDED BY FAA

FOR AND IN CONSIDERATION OF $ OVC    THE
UNDERSIGNED OWNER(S) OF THE FULL LEGAL
AND BENEFICIAL TITLE OF THE AIRCRAFT DES-
CRIBED AS FOLLOWS:

CONVEYANCE RECORDED

| UNITED STATES N 707 MQ | 2005 JUL 12 AM 9 31 |
| REGISTRATION NUMBER | |

AIRCRAFT MANUFACTURER & MODEL
**BOEING 707-368C**

AIRCRAFT SERIAL No.
**21368**

FEDERAL AVIATION
ADMINISTRATION

DOES THIS 2nd DAY OF June 20 05
HEREBY SELL, GRANT, TRANSFER AND
DELIVER ALL RIGHTS, TITLE, AND INTERESTS
IN AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

**NAME AND ADDRESS**
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

PURCHASER

Omega Air, Inc.
9023 Wetmore Road
San Antonio, Texas 78216

DEALER CERTIFICATE NUMBER

AND TO its successors
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.
XXXXXXXXXXXXXXXXXXX AND ASSIGNS TO HAVE AND TO HOLD

IN TESTIMONY WHEREOF    I    HAVE SET my    HAND AND SEAL THIS 2nd DAY OF June 20 05

SELLER

| NAME (S) OF SELLER (TYPED OR PRINTED) | SIGNATURE (S) (IN INK) (IF EXECUTED FOR CO-OWNERSHIP, ALL MUST SIGN) | TITLE (TYPED OR PRINTED) |
| Alameda Corporation, as Owner Trustee | [signature] | President |

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING; HOWEVER, MAY BE REQUIRED
BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

ORIGINAL: TO FAA    Orig std M+T
05 153145 221
$5.00 6/09/2005

AC Form 8050-2 (8/02) (NSN 0052-00-629-0003) Supersedes Previous Edition

EXHIBIT

PENGAD 800-631-6989

**HOFFMAN & HERTZIG, P.A.**
901 PONCE DE LEON BOULEVARD • SUITE 500
CORAL GABLES, FLORIDA 33134-3059

TEL. 305.445.3100 • FAX 305.444.5656

CARL H. HOFFMAN
chh@hoffhertz.com

November 30, 2009

**VIA CERTIFIED MAIL - # 7007 2680 0003 0902 8992**

M. D. Jaffee, Jr., CEO
JETRAN International, Ltd.
12400 Hwy 281, North, Suite 150
San Antonio, Texas 78216

RE: Commission on Sale of B707-368C, MSN 21368

Dear Mr. Jaffee:

This office represents Leonard Simkovitz, who, as you know, was employed by JETRAN International, Ltd., in 2002-2004 as Senior Vice President - Aircraft Sales & Leasing.

On June 23, 2003, you entered into a written commission agreement with Mr. Simkovitz with respect to the above aircraft, in compensation for his supplemental work relating to two VIP aircraft belonging to the former Saudi King Abdulla. I have enclosed a copy of the agreement for your reference. As you will note, the agreement contains a promise to pay Mr. Simkovitz an amount equal to 3% of the sales price of the aircraft, upon sale of the aircraft.

According to FAA title records, the aircraft was sold to Omega Air, Inc., on June 2, 2005. As you know, FAA records do not reflect the sales price of aircraft transactions. However, Mr. Simkovitz believes that the aircraft was sold for seven million dollars. If Mr. Simkovitz' information is correct, he is owed a commission of $210,000 (3% x $7,000,000) together with interest from June 2, 2005.

Please have your attorneys contact me to provide document-tary evidence of the sales price and to make arrangements for payment of the amounts due under the agreement.

Thank you for your attention to this matter.

Very truly yours,

Carl H. Hoffman

Encl.

EXHIBIT

PENGAD 800-631-6989

JETRAN International, Ltd

June 23, 2003

Leonard Simkovitz
Jetran International, Ltd
Miami. Florida.

RE: Sale Aircraft B 707-368C, MSN 21368        related engines and parts.

Leonard

Pursuant to our telephone conversation dated June 19, 2003, this letter will confirm our agreement wherein you will be paid a ~~five~~ three (3%) percent commission, paid immediately upon the sale of the above referenced aircraft, engines and related parts, for your efforts and intervention in the negotiation, whether the aircraft, engines and related parts are owned by Jetran International, Ltd. Or whomever Jetran assigns its ownership rights to subject aircraft, engines and parts. This commission is in addition to your current salary and other compensation and it relates solely to the above referred aircraft, engines and parts and commission shall be paid to you regardless of whoever is responsible for the subsequent sale of the aircraft, engines and parts and regardless of any commissions, if any, paid to third parties.

Best regards

By : _____
Jetran International LLC, Its General Partner

By: _____
     M.D. Jaffe. Jr. C.E.O.

HOFFMAN & HERTZIG, P.A.
901 PONCE DE LEON BOULEVARD • SUITE 500
CORAL GABLES, FLORIDA 33134-3059

TEL. 305.445.3100 • FAX 305.444.5656

CARL H. HOFFMAN
chh@hoffhertz.com

December 21, 2009

**VIA CERTIFIED MAIL – # 7007 2680 0003 0902 9005**

M. D. Jaffee, Jr., CEO
JETRAN International, Ltd.
12400 Hwy 281, North, Suite 150
San Antonio, Texas 78216

RE: Commission on Sale of B707-368C, MSN 21368

Dear Mr. Jaffee:

On November 30, 2009, I wrote to you concerning the commission claimed by my client, Leonard Simkovitz, on the above transaction. However, as of this date, I have received no response to my letter.

Please have your attorneys contact me if you would like to resolve this matter. Otherwise, if I have not heard from you within 30 days from the date of this letter, I will have no alternative but to bring appropriate legal proceedings for the protection of my client's rights. As you know, such legal proceedings may involve costs and fees in addition to the amount claimed.

PLEASE BE GOVERNED ACCORDINGY.

Very truly yours,

Carl H. Hoffman

EXHIBIT

E



**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

M.D. Joffee, h CEO
Jetran International
12400 Hwy 281, North
Suite 150
San Antonio, Texas, 78216

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Mike Wickman_   ☐ Agent   ☐ Addressee
B. Received by ( *Printed Name* )   C. Date of Delivery
Mike Wickman
D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

JAN 05 2010

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7007 2680 0003 0902 9005

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $  4 4 |
| Certified Fee | 7 8 0 |
| Return Receipt Fee (Endorsement Required) | 2 3 0 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $  5 5 4 |

Postmark Here

DEC 21 2009

Sent To  M.D. Joffee h. CEO
Street, Apt. No.; or PO Box No.  12400 Hwy 281, N. Suite 150
City, State, ZIP+4  San Antonio, Texas, 78216

PS Form 3800, August 2006   See Reverse for Instructions

Case 1:10-cv-21431-JAL   Document 1   Entered on FLSD Docket 05/03/2010   Page 1 of 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LEONARD SIMKOVITZ,                          :

                    Plaintiff,              :
v.                                                      Case No:
                                            :
JETRAN INTERNATIONAL, LTD., a
Texas Limited Partnership, and              :
JETRAN, LLC, a Texas Limited Lia-
bility Company, as General Partner          :
of JETRAN INTRNATIONAL, LTD.,
                                            :
                    Defendants.
_____           :

## COMPLAINT

    Plaintiff, LEONARD SIMKOVITZ, sues defendants, JETRAN IN-

TERNATIONAL, LTD., a Texas limited partnership, and JETRAN, LLC,

a Texas limited liability company, as general partner of JETRAN

INTERNATIONAL, LTD., and states:

    1.   Plaintiff, LEONARD SIMKOVITZ, is a citizen and resi-

dent of the State of Florida.

    2.   Defendant, JETRAN INTERNATIONAL, LTD., is a Texas lim-

ited partnership having its principal place of business in San

Antonio, Texas.

    3.   Defendant, JETRAN LLC, is a Texas limited liability

company, having its principal place of business in San Antonio,

Texas.


EXHIBIT
F
PENGAD 800-631-6989

to herein as "BOEING"), immediately upon the sale thereof. The commission was agreed to be due "regardless of whoever is responsible for the subsequent sale" of the BOEING and "regardless of any commissions, if any, paid to third parties." See Exhibit "1" hereto ("CONTRACT").

9.   On or about June 2, 2005, defendant sold the BOEING for an undisclosed amount, which, upon information and belief, was the sum of $6,000,000.

10.   At all times prior to or about September 9, 2009, defendants failed to advise plaintiff that the BOEING had been sold and they actively concealed the transaction from plaintiff until or about September 9, 2009.

11.   On repeated occasions after September 9, 2009, plaintiff has requested information concerning the transaction and the sales price of the BOEING but defendants have failed and refused to provide the requested information. Defendants continue to refuse to disclose the sales price to plaintiff and they continue to withhold from plaintiff all information concerning the transaction.

<u>COUNT ONE</u>

Plaintiff sues defendants and alleges:

12.   Plaintiff realleges ¶¶ 1 through 11 above.

13.   This is an action for breach of contract.

14. All conditions precedent to defendants' performance obligations have been fully performed or have occurred, including, but not limited to, any and all performance required by plaintiff.

15. On or about June 2, 2005, defendants breached the CONTRACT by failing to pay to plaintiff his three (3%) percent commission immediately upon the sale of the BOEING.

16. As a direct and proximate result of the aforementioned breach by defendants, plaintiff has sustained damages.

WHEREFORE, plaintiff demands judgment against defendants for damages, plus prejudgment interest and court costs, and for any and all other relief which this Court may deem just and proper.

<u>COUNT TWO</u>

Plaintiff sues defendants and alleges:

17. Plaintiff realleges ¶¶ 1 through 11 above.

18. This is an action for an accounting.

19. On or about June 2, 2005, defendants sold the BOEING to a third party and received a valuable consideration for it. However, defendants failed to disclose the sales price of the BOEING to plaintiff and plaintiff has no knowledge of the sales price and no means to determine the sales price without intervention by this Court.

20.  Without knowledge of the sales price of the BOEING, plaintiff is unable to determine the dollar amount of the commission owed to him.

21.  In spite of plaintiff's repeated demands, defendants have failed and refused to render a proper accounting of the BOEING transaction to plaintiff so as to provide a basis for calculating the precise amount due to plaintiff.

22.  By reason of the foregoing, plaintiff has been injured and has no adequate remedy at law.

WHEREFORE plaintiff demands judgment for an accounting of the amounts due from defendants to plaintiff, for a lien on the proceeds received by defendants, for judgment against defendants for the amount found to be due in the accounting, and for such other relief as this Court may deem just and proper.

DATED this 3rd day of May, 2010.

/s/ Carl H. Hoffman
Carl H. Hoffman (Florida Bar No: 118997)
Attorney E-mail address: chh@hoffhertz.com
HOFFMAN & HERTZIG, P.A.
901 Ponce de Leon Blvd., Suite 500
Coral Gables, Florida 33134
Telephone: (305) 445-3100 x 104
Facsimile: (305) 444-5656
Attorney for Plaintiff

JETRAN International, Ltd

June 23, 2003

Leonard Simkovitz
Jetran International, Ltd
Miami. Florida.

RE: Sale Aircraft B 707-368C, MSN 21368      related engines and parts.

Leonard

*three (3%)*

Pursuant to our telephone conversation dated June 19, 2003, this letter will confirm our agreement wherein you will be paid a ~~five~~ ( 5) percent commission, paid immediately upon the sale of the above referenced aircraft, engines and related parts, for your efforts and intervention in the negotiation, whether the aircraft, engines and related parts are owned by Jetran International, Ltd. Or whomever Jetran assigns its ownership rights to subject aircraft, engines and parts. This commission is in addition to your current salary and other compensation and it relates solely to the above referred aircraft, engines and parts and commission shall be paid to you regardless of whoever is responsible for the subsequent sale of the aircraft, engines and parts and regardless of any commissions, if any, paid to third parties.

Best regards

By : _____
Jetran International LLC, Its General Partner

By: _____
    M.D. Jaffe. Jr. C.E.O.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LEONARD SIMKOVITZ,

      Plaintiff,

v.                           Case No.1:10-cv-21431-LENARD-TURNOFF

JETRAN INTERNATIONAL, LTD., a
Texas Limited Partnership, and
JETRAN, LLC, a Texas Limited Liability
Company, as General Partner of
JETRAN INTRNATIONAL, LTD.,

      Defendants.
_____/

### JETRAN INTERNATIONAL, LTD.'s AND JETRAN, LLC's
### ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIM

      Defendants/Counterclaimants, JETRAN INTERNATIONAL, LTD. and JETRAN, LLC,

through undersigned counsel, hereby file their Answer, Affirmative Defenses, and Counterclaim

in response to the Complaint filed by Plaintiff/Counterdefendant, LEONARD SIMKOVITZ, and

state:

### ANSWER

      1.      Denied without knowledge.

      2.      Admitted.

      3.      Admitted.

      4.      Admitted.

      5.      Admitted.

      6.      Admitted that this Court has jurisdiction, denied as to liability.

      7.      Admitted.



Case No.1:10-cv-21431-LENARD-TURNOFF

8.     Admitted as to Contract, denied as to allegations in that the document speaks for itself.

9.     Denied.

10.    Denied.

11.    Denied.

12.    Defendants reallege their responses to paragraph 1 through 11.

13.    Admitted as to action, denied as to liability.

14.    Denied without knowledge.

15.    Denied.

16.    Denied.

17.    Defendants reallege their responses to paragraph 1 through 11.

18.    Admitted as to action, denied as to liability.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Any allegation of the Complaint which has not been specifically responded to is denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.     Plaintiff has failed to state a claim upon which relief can be granted.

Case No.1:10-cv-21431-LENARD-TURNOFF

### Second Affirmative Defense

2.      Plaintiff's purported claims are barred in whole or in part by the applicable statute of limitations.

### Third Affirmative Defense

3.      Plaintiff's purported claims are subject to subject to setoff, offset, and/or recoupment.

### Fourth Affirmative Defense

4.      Plaintiff's purported claims are barred in whole or in part by laches, estoppel, or waiver.

### Fifth Affirmative Defense

5.      Plaintiff's purported claims are barred in whole or in part by the doctrine of unclean hands.

### Sixth Affirmative Defense

6.      Plaintiff's purported claims are barred in whole or in part by the doctrine of accord and satisfaction.

### Seventh Affirmative Defense

7.      The Plaintiff has released the Defendants from any and all claims.

### Eighth Affirmative Defense

8.      Plaintiff's purported claims are barred in whole or in part by the doctrine of accord and satisfaction.

### Ninth Affirmative Defense

9.      Plaintiff's purported claims are barred in whole or in part by the Plaintiff's breach of the covenant of good faith and fair dealing.

- 3 -

Case No.1:10-cv-21431-LENARD-TURNOFF

### Tenth Affirmative Defense

10.     Plaintiff's purported claims are barred in whole or in part by the doctrine of unjust enrichment.

### Eleventh Affirmative Defense

11.     Plaintiff's purported claims are barred in whole or in part by the Statute of Frauds.

### Reservation For Additional Defenses

12.     Defendants reserve the right to assert such additional defenses as may appear applicable during the course of this litigation.

WHEREFORE, Defendants, JETRAN INTERNATIONAL, LTD. and JETRAN, LLC, respectfully seek the following relief:

(a) that Plaintiff's Complaint be dismissed, with prejudice, in its entirety;

(b) that a judgment issue reimbursing Defendants for costs incurred in defending against this lawsuit, including an award of reasonable attorney's fees; and

(c) any such other and further relief as this Court deems just and proper.

### COUNTERCLAIM

1.     Counterclaimants, JETRAN INTERNATIONAL, LTD. and JETRAN, LLC, through undersigned counsel, sues the Counterdefendant, LEONARD SIMKOVITZ, and alleges:

### Jurisdiction

2.     This is an action for damages in excess of $75,000 exclusive of interest, costs and attorney's fees.

3.     This Court has jurisdiction over the subject matter of this action in that the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and is between citizens of different States.

Case No.1:10-cv-21431-LENARD-TURNOFF

4.      This Court also has ancillary and pendent subject matter jurisdiction over the claims alleged herein.

## Factual Allegations Common to All Counts

5.      Counterclaimants hired the Counterdefendant to manage an aircraft owned by Counterdefendants which was on lease to a lessee in the Country of Bolivia (the "Contract").

6.      As part of Counterdefendant's duties under the Contract, Counterdefendant was required to collect lease payments from the aircraft lessee and remit these funds to the Counterclaimants.

7.      The Counterclaimants recently learned that the Counterdefendant did not remit all funds collected as required.

8.      Counterdefendant failed to advise the Counterclaimants that lease payments had not been remitted and the Counterdefendant actively concealed this fact from Counterclaimants.

9.      On several occasions after learning of the missing lease payments, Counterclaimants have requested information concerning the missing lease payments, but Counterdefendant has failed and refused to provide the requested information.

10.     The Counterdefendant continues to refuse to disclose the missing lease payments to the Counterclaimant and continues to withhold from Counterclaimant all information concerning these lease payments.

11.     Counterclaimants have demanded an accounting of the lease payments, but Counterdefendant has failed to comply with these demands.

12.     All conditions precedent to the filing of this action have been satisfied or waived.

13.     Counterclaimants have retained undersigned attorneys and are obligated to pay them a reasonable fee for their services.

- 5 -

Case No.1:10-cv-21431-LENARD-TURNOFF

## COUNT I
## BREACH OF CONTRACT

14.     Counterclaimant realleges paragraphs 1 through 13 as if fully set forth herein.

15.     Counterdefendant has breached the Contract by failing to account for the lease payments and a failure to remit lease payments to the Counterclaimants.

16.     As a direct and proximate result of Counterdefendant's breach of the Contract, Counterclaimants have been damaged.

17.     WHEREFORE, Counterclaimants demand judgment for damages, interest, court costs and such other relief the Court deems just and proper.

## COUNT II
## ACCOUNTING

18.     Counterclaimants realleges paragraphs 1 though 13 as if fully set forth herein.

19.     Counterdefendant has failed to disclose the lease payments and has failed to remit all of the lease payments due to the Counterclaimants.

20.     Counterclaimants have no knowledge of the total lease payments collected nor of the lease payments not remitted and have no way to determine these without intervention by this Court.

21.     In spite of Counterclaimants' repeated demands, Counterdefendant has failed and refused to render a proper accounting so as to provide a basis for calculating the precise amount due to Counterclaimants.

22.     By reason of the foregoing, Counterclaimants have been injured and have no adequate remedy at law.

WHEREFORE Counterclaimant demands judgment for an accounting of the amounts due from Counterdefendant to Counterclaimants, for a lien on the lease payments collected by

Case No.1:10-cv-21431-LENARD-TURNOFF

Counterdefendant and not remitted to Counterclaimant, for judgment against Counterdefendant for the amount found to be due in the accounting, and for such other relief as this Court may deem just and proper.

**COUNT III**
**UNJUST ENRICHMENT**

13.    Counterclaimants, in the alternative, reallege and reincorporate paragraphs 1 through 13 as if fully set forth herein.

14.    A benefit was conferred upon the Counterdefendant by Plaintiff for the value of the lease payments which were not remitted to the Counterclaimants.

15.    This benefit was appreciated by the Counterdefendant in that the Counterdefendant accepted the benefit without objection.

16.    The acceptance and retention of such benefit by the Counterdefendant are such that it would be inequitable for the Counterdefendant to retain this benefit without paying the value thereof.

17.    The Counterdefendant has thus been unjustly enriched.

WHEREFORE, Counterclaimants demand judgment against Counterdefendant for the reasonable value of the lease payments and, in addition, interest, costs, and for such other relief as this Court may deem just and proper.

Dated: June 10, 2010
        Miami, Florida

Case No.1:10-cv-21431-LENARD-TURNOFF

Respectfully submitted,

/s/ Richard L. Richards
RICHARD L. RICHARDS
Florida Bar No. 9415
Email: rrichards@richpa.net
RICHARDS & ASSOCIATES
232 Andalusia Avenue, Suite 202
Coral Gables, Florida 33134
Telephone: (305) 448-2228
Facsimile: (305) 448-2229
*Attorneys for Jetran International, Ltd. &
Jetran, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2010, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Richard L. Richards
RICHARD L. RICHARDS

- 8 -



February 24, 2005


Omega Air
Collinstown Cross
Dublin Airport
Co. Dublin
Ireland

      Re: Boeing 707-300 aircraft: MSN 20919, 21092 and 21368

Gentlemen:

      This sets forth the terms and conditions of the agreement between Omega Air, Ltd. ("Omega") and Jetran International, Ltd. ("Jetran") regarding the three Boeing 707-300 model aircraft currently owned as follows:

| | |
|---|---|
| 20919 (Egyptian) | Omega Air or an affiliate |
| 21092 (Indonesian) | Omega Air or an affiliate |
| 21368 (Saudi) | Jetran International, Ltd. or affiliate |

1. Omega and Jetran agree to swap 21092 and 21368. Upon execution of this agreement the parties shall enter into such definitive agreements as required to transfer the aircraft in accordance with standard practices in the aviation industry. Omega will induct 21368 into its tanker conversion program.

2. The remaining aircraft will be owned as follows:

      20919  (the "Omega Aircraft")
      21092  (the "Jetran Aircraft")
      (jointly the "Candidate Aircraft")

3. Omega and Jetran agree to ferry the Candidate Aircraft, each at the owner's sole expense to an agreed storage location. The parties agree to place all engines into a long term storage program at the storage facility. The Candidate Aircraft will remain in storage together for a period of 18 months from the date of delivery of the last Candidate Aircraft to the storage facility (the "Holding Period") for the express purpose of marketing to the government of Israel ("GOI").

4. In the event that the government of Israel becomes a prospective purchaser of a 707-300 aircraft, the parties shall nominate one agent to market the Candidate Aircraft to the GOI. The agent shall offer both aircraft on the same terms and conditions to GOI. In order to complete the sale the agent may offer engines from either Candidate Aircraft.

5. In the event that one of the Candidate Aircraft is sold to the GOI, the parties agree to split the net proceeds from the sale of the aircraft equally between them. "Net Proceeds" shall be defined at the contract purchase price paid by the buyer less all carrying costs and expenses ("Carrying Costs") that both parties have incurred with respect to both Candidate Aircraft.

*12400 Hwy 281, North, Suite 150*
*San Antonio, Texas   78216*
*Telephone   210 495 7766   Fax  210 495 7799*

EXHIBIT

H

PENGAD 800-631-6989

February 24, 2005
Page 2 of 2

6. In the event of a sale of one of the Candidate Aircraft, Omega shall have the right to the remaining Candidate Aircraft by paying over to Jetran USD 500,000.

7. In the event that (i) either party withdraws its aircraft prior to the expiration of the Holding Period, so that it shall not be available for a sale to the GOI and (ii) the remaining Candidate Aircraft is sold to the GOI, then the owner of the aircraft sold to the GOI shall be entitled to receive an additional 10% of the contract purchase price "off the top".  Thereafter the Carrying Costs shall be deducted and the parties will share the remaining net proceeds equally.

8. In the event that both Candidate Aircraft are sold to the GOI, the parties shall share equally in all Net Proceeds from the sale of both Candidate Aircraft.

9. In the event that no aircraft has been sold during the Holding Period, the parties shall make an assessment of the agreement to determine an extension or termination of this agreement.

10. In the event that any of the aircraft which are the subject of this agreement, is sold to the GOI during the term of this agreement by either party or by an affiliate of either of the parties, the proceeds of the sale shall be shared in accordance with the terms of this agreement.

If the foregoing accurately reflects your understanding of the terms and conditions of the agreement between Omega and Jetran, please indicate by signing in the space provided below, evidencing your acceptance of and agreement to this letter agreement.

Jetran International, Ltd.

By: Jetran, LLC, Its General Partner

By _____

Douglas Jaffe, CEO

ACCEPTED AND AGREED TO THIS

_____ DAY OF FEBRUARY, 2005

OMEGA AIR LIMITED

By _____   24/02/05

Desmond McEvaddy

Director



March 19, 2004

<u>*Via Facsimile: (212) 551-0261*</u>

Lt. Colonel Eli Shaldag
Assistant to the Director
Air Force Procurement
Government of Israel
Ministry of Defense
Mission to the USA
800 2JIdAVE
New York, New York 10017



DEPOSITION
EXHIBIT
*22*

Re:  Proposal for Lease/Purchase of Boeing 707-368C model aircraft

Gentlemen:

On behalf of Jetran International, Ltd. ("Lessor"), I am pleased to present the following Memorandum of Understanding ("MOU") regarding the basic terms and conditions upon which Lessor is willing to offer for lease/purchase to the Ministry of Defense, Government of Israel ("Lessee") one (1) Boeing 707-368C model aircraft described herein.  This letter supersedes all prior communication by or on behalf of Lessor and its affiliates.

| | |
|---|---|
| **Aircraft:** | One (1) used executive configured Boeing 707-368C model aircraft manufactured on June 27, 1977 equipped with four (4) Pratt & Whitney JT3D-3B engines, as more particularly described in the attached specification of the aircraft (the "Aircraft"). |
| **Delivery Condition:** | On the Delivery Date the aircraft will have completed a comprehensive C check in accordance with the manufacturer's maintenance program, in acceptable configuration. |
| **Terms of Lease:** | |
| **Lease Term:** | 24  months, with option to extend for additional 24 months |
| **Lease Payments:** | US $105,000 monthly |

*12400 Hwy 281, North, Suite 150*
*San Antonio, Texas  78216*
Telephone           5 7799

**EXHIBIT**

*1*

September 10, 2010
Page 2 of 2

| | |
|---|---|
| **Maintenance:** | C checks during the term of the lease to be performed by Lessor |
| **Purchase Option:** | after 24 months:  US $6,000,000<br>after 48 months   US $4,000,000 |
| **Inspection:** | A pre-delivery inspection of the Aircraft and associated technical records may be performed at any time.  Lessor shall not be liable for any expenses incurred by Lessee for the inspection, consultation, or other means by which Lessee requires information or analysis regarding the Aircraft. Lessor shall supply appropriate resources as deemed necessary and commercially reasonable to facilitate the inspection of the Aircraft and technical records by Lessee. |
| **Export/Import:** | If applicable, Lessee shall be responsible for all costs associated with exporting the Aircraft from the United States of America or other mutually agreed delivery location (including cost of acquiring a Standard Certificate of Airworthiness for Export) and import into any other country. |
| **Taxes:** | `Lessee shall be responsible for any and all taxes associated with the sale of the Aircraft excluding taxes based solely upon the gross income or net receipts of Lessor. |

We look forward to an opportunity to meet with you to discuss this proposal.
Best regards,

JETRAN INTERNATIONAL, LTD.
By:     JETRAN, LLC., Its General Partner

By:

       M.D. Jaffe, Jr.
       CEO

cc:     Director Mr. Un Hagoel
       Air Force Procurement