UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-21431-LENARD/TURNOFF

LEONARD SIMKOVITZ,      :

        Plaintiff,      :

v.      

              :

JETRAN INTERNATIONAL, LTD., et al      

              :

        Defendants.      
_____:

### PLAINTIFF'S MOTION FOR A NEW TRIAL AND MEMORANDUM OF LAW

Plaintiff, Leonard Simkovitz, pursuant to Rule 59(a)(2), Fed.R.Civ.P., moves the Court to open and amend "Section II. C. Valuation" of the "Findings of Fact and Conclusions of Law and Judgment" [D.E. 112]("Judgment"), dated June 17, 2011, and to direct the entry of a new judgment, upon the following grounds:

### I. SUMMARY OF ARGUMENT

In Section II.C., paragraph 12, of the Judgment, the Court found that "[t]he 'market method' of valuation' and not the 'income capitalization method' is more appropriate for determining the value of the consideration received in connection with the swap agreement." However, the Court seems to have misinterpreted, overlooked and/or failed to consider the following matters, to wit, (1) the weight to be accorded to Omega's sale of 20919 as a comparable sale for purposes of valuation; (2) the weight to be accorded to Jaffe's unaccepted offers to sell 21368 and 21092 to the Israeli Government; (3) the fact that plaintiff's commission is based on the value of a fully modified aircraft; (4) the specific mistakes of fact which resulted in the $500,000 valuation; and (5) the manifest error of law arising from a judgment which lacks finality.

## *II. SUMMARY OF TRIAL EVIDENCE*

Joint Exhibit ("JX") # 8 [the "Commission Agreement"] provides that plaintiff will be paid a 3% commission "immediately upon the sale" of 21368. Jaffe testified that this commission is based on the gross sales price of the aircraft. Tr. 87. In other words, the costs incurred in modifying the aircraft increase the commission that Simkovitz is entitled to receive. Tr. 99.

JX # 14 [the "Swap Agreement"] was designed to eliminate competition between Omega and Jetran in the anticipated sale of a 707 to the Israeli Government. Under the Swap Agreement, a sales agent was to offer 21092 and 20919 "on the same terms and conditions" to the Government of Israel. JX # 14, ¶ 4.

In effect, under the Swap Agreement, the price received by Jetran for 21368 was (1) the swapped aircraft, 21092, (JX # 14, ¶ 1); plus (2) a non-compete agreement with Omega (JX # 14, ¶ 4); plus (3) $500,000, to be paid by Omega at Omega's option, in exchange for the remaining aircraft, if either, 21092 or 20919, were sold to the Israelis.[1] *Either party had the right to withdraw its aircraft during the holding period.*[2]

As found by the Court, the swap/sale of 21368 occurred on June 2, 2005. Judgment ¶ 13. Consequently, under the Commission Agreement, Jetran was obligated to pay immediately to plaintiff, a 3% commission calculated on the value of a *fully modified* 21092. See, Tr. 87 ("that commission is based upon the gross sales price without any consideration of preparation costs or

---

[1] JX # 14, ¶ 6. Defendant's attorney argued that damages are limited to $500,000 "because that's the provision in the swap agreement." Tr. 113. But that amount is merely a supplemental fall-back payment that pertained to an unsold aircraft after the goal of the non-compete provisions of the Swap Agreement had been accomplished. It does not purport to be the full value exchanged.

[2] JX # 14, ¶ 7. Also, unlike the Commission Agreement (which provided a commission based on the gross sales price), the Swap Agreement, provided that the split between Jetran and Omega would be based on "Net Proceeds." (JX # 14, ¶ 5).

anything else"). In fact, the costs of modifying the aircraft "increases the amount of money [Simkovitz is] going to get for his commission." Tr. 99. And Jaffe testified that it would cost $7,000,000 to prepare the aircraft for sale. Tr. 86. But those anticipated expenditures would only increase plaintiff's commission because "that commission is based upon the gross sales price without any consideration of preparation costs or anything else." Tr. 87.

Jaffe acknowledged that 21368, 21092 and 20919 were "all pretty similar airplanes." Tr. 79. The following comparable 707 transactions are in evidence: (1) the Jaffe offer of March 19, 2004, to lease 21368 to the Israeli Air Force for a combined lease purchase after 24 months totaling $8,520,000, or a combined lease purchase after 48 months totaling $9,040,000; JX # 11; (2) the recent sale to Israel of 20919 for $8,000,000; Tr. 86; and (3) the Jaffe proposal of January 3, 2010, to sell 21092 to the Israeli Air Force for $8,500,000. JX # 25. Jaffe testified that he had as much experience in appraising 707s as anybody. Tr. 76.

Under the Commission Agreement, plaintiff's commission was based on the price received by Jetran for 21368, immediately upon the sale. JX # 8. As a result of the Swap Agreement, that "price" was the value of a fully modified 21092, plus the value of the options contained in Swap Agreement as of June 2, 2005. JX # 14.

### III. REHEARING STANDARD

In an action without a jury, Rule 59 of the Federal Rules of Civil Procedure empowers this court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." FedR.Civ.P. 59(a)(2). This rule confers wide authority upon a trial judge, *Gasperini v. Center for Humanities, Inc.* 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659, 64 USLW 4607 (1996), and makes it clear that "it is not improper for a court to depart from a prior

holding if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318, 36 Fed.R.Serv.2d 11 (1983).

The purpose of the rule is to direct a court's attention to ***a manifest error of law or mistake of fact.*** See *Hannover Ins. Co. v. Dolly Trans Freight, Inc.*, 2007 WL 170788, at *2 (M.D.Fla. 2008), citing *Ball v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir.1995) (quoting 11 Charles A. Wright et al., Federal Practice & Procedure § 2804, at 53 (2d ed.1995)).

### *IV. ARGUMENT AND MEMORANDUM OF LAW*

#### (1) The Sale of 20919 Is A Comparable Sale For Purposes of Valuation

The "market approach" uses comparable sales of similar properties. *See U.S. v. 320.0 Acres of Land, More or Less in Monroe County, State of Fla.*, 605 F.2d 762, 821 (Fla. 5th Cir. 1979) ; *see also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 2004 WL 1899923 (N.D.Ill. 2004) (the market approach is based on comparable sales of similar property); *In re J.R. Rentals, Inc.*, 28 B.R. 357, 359 (Bkrtcy.Ohio 1983) (the market approach depends upon the valuation of comparable sales); and *Branch v. C.I.R.*, 1987 WL 40373 (Tax Court, 1987) (the market approach involves comparison of the subject property with sales data on comparable properties).

Here, Jaffe testified that 21368, 21092 and 20919 were comparable aircraft ("all pretty similar airplanes"). Tr. 79. Due to his admitted expertise in 707 appraisals, he was certainly qualified to make this judgment. Tr. 76. Jaffe testified that 20919 had been recently sold for $8,000,000. Tr. 86. Although the sale was made later than the valuation date in 2005, there was no testimony that the value of 707s had appreciably changed in recent years. Indeed, Jaffe offered 21368 and 21092 for sale in 2004 and 2010 for essentially the same price. As a matter of law, comparable sales of similar properties that are reasonably proximate in time represent the

best evidence of fair market value. *See Arbini v. C.I.R.*, 2001 WL 671763, 10 (U.S.Tax Ct. 2001)("in some cases, sales that occurred during years other than those in issue are helpful in determining fair market value because those sales may indicate the fair market value for the years in issue"), *citing Estate of Spruill v. Commissioner*, 88 T.C. 1197, 1229 n. 24, 1233, 1987 WL 49324 (1987); *Estate of Rabe v. Commissioner*, T.C. Memo.1975–26, affd. without published opinion 566 F.2d 1183 (9th Cir.1977); *see also The Shreveport*, 42 F.2d 524, 531 (D.C.S.C. 1930) (latitude must be allowed for comparable sales on later dates).

For the foregoing reasons, 20919 was a comparable sale.

### (2) Jaffe's Unaccepted Offers To Sell Are Substantial Evidence of Value

The Court overlooked and failed to consider that Jaffe's unaccepted offers to the Israeli Air Force to lease/sell 21368 and to sell 21092 for more than $8,000,000, are essentially the equivalent of comparable sales for the purposed of computing fair market value.

As a general principle, unaccepted offers to sell property "represent poor barometers of value." *Spectrum Sciences and Software, Inc. v. United States*, 98 Fed.Cl. 8, 21, n.17 (2011). On the other hand, however, "where the circumstances surrounding an unaccepted offer can be corroborated by other evidence, the offer can be probative of value." *Id*, at n.18; *see, also*, Vitauts M. Gulbis, Annot., *Unaccepted Offer For Purchase of Real Property as Evidence of its Value*, 25 A.L.R.4th 571 (1983). Moreover, Jaffe's offers to sell are essentially party admissions. *See* 25 A.L.R. 4th 983; *see also, e.g., Hull v. Sheehan*, 108 Cal.App.2d 804, 805 (Cal.App.2d 1952), *citing* 20 Am.Jur. 341, sec. 375 ("an offer to sell property may be proved against the owner as an admission of its value at or near the time of the offer").

Here, the unaccepted offers are probative of value because (1) they are corroborated by the recent sale of 20919 for $8,000,000; Tr.86; (2) they are corroborated by the valuation of

21368 based on income capitalization; Sealed Tr. 1-23; and (3) Jaffe has admitted to extensive experience and expertise in 707 appraisals; Tr. 76. Therefore, Jaffe's unaccepted offers are probative of value in the amount of $8,000,000+. *Spectrum Science,* 98 Fed.Cl. at 22.

Again, these comparable transactions "that occurred during years other than those in issue are helpful in determining fair market value because [they] may indicate the fair market value for the years in issue. *Arbini v. C.I.R.,* 2001 WL 671763, 10 (U.S.Tax Ct. 2001) *citing Estate of Spruill v. Commissioner,* 88 T.C. 1197, 1229 n. 24, 1233, 1987 WL 49324 (1987).

### (3) Plaintiff's Commission is Based on the Value of a Fully Modified Aircraft

Jaffe repeatedly confirmed that plaintiff's commission is based on the value of a fully modified aircraft:

Q. Mr. Jaffe, just to make sure, all of these costs, whatever it costs to improve the airplane, whatever ---

A. That's right.

Q. --- that makes no difference to Mr. Simkovitz?

A. Makes no difference. He gets ---

Q. His commission is on the price. In fact, if the airplane ---

A. Unfortunately, it is.

Q. Yes. If the airplane is worth 200,000 and you spend 800,000 ---

A. Doesn't make any difference.

Q. --- or you spend 8 million, his commission is on the 8 million.

A. Absolutely correct.
Tr. 98.

Q. So it doesn't make any difference what it costs to fix it up. In fact, that increases the amount of money he's going to get for his commission?

A. That's exactly right.

Tr. 98-99.

In view of this testimony, it is clear that, in order to be comparable, comparable events must necessarily involve modified aircraft.

Indeed, plaintiff's commission is *not* dependent on Jetran's profits, as defendants seem to have urged. Rather, the commission is calculated on the value of a comparable modified aircraft irrespective of profitability for Jetran.

### (4) Specific Mistakes of Fact Which Resulted in the $500,000 Valuation

Under the Commission Agreement, plaintiff's commission was due "immediately upon the sale" of 21368. The sale of 21368 took place on June 2, 2005, and the price received by Jetran for 21368 was 21092, plus the non-compete provisions of the Swap Agreement.

Leaving aside the non-compete provisions for the time being,[3] the price received by Jetran for 21368 was necessarily no less than the value of 21092 as of June 2, 2005. And, under the Commission Agreement, *as explained by Jaffe*, that value is the value of a *fully modified* 21092.

The Court applied the market method, which consists of an analysis based upon comparable sales data. The issue then is simply: What proof was offered at trial to show the value of a fully modified 707? As discussed above, that proof consists of Jaffe's unaccepted offers and the sale of 20919, all of which show a value in excess of $8,000,000.[4]

---

[3] The non-compete provisions are of limited value since they existed only during the "holding period" of the aircraft, and either party had the right to withdraw its aircraft at any time during the holding period. JX # 14, ¶ 7.

[4] Before the "swap," on March 19, 2004, Jaffe offered to sell 21368 to the Government of Israel for a lease/purchase agreement with a total value of between $8.5 million and $9 million. [JX # 11]. After the swap, on January 23, 2010, Jaffe offered to sell 21092 to the Israeli Air Force for $8.5 million. [JX # 25]. Jaffe testified that he is an expert in Boeing 707 valuation. [Tr. 72]. Jaffe further testified that he entered into the "swap" agreement thinking the odds were that he would

In addition to failing to evaluate comparable sales and offers as discussed above, the error here, i.e., the Court's mistake of fact regarding valuation, arose from defendants' argument which (1) ignored the basis for calculating the 3% commission, i.e., the value of a *fully modified* aircraft; and (2) focused on the supplemental $500,000 fall-back payment that pertained to an unsold aircraft after the goal of the non-compete provisions of the Swap Agreement had been accomplished.

Indeed, the Court overlooked and failed to consider the plain language of paragraph 6 of the Swap Agreement, JX # 14:

> 6. ***In the event of a sale of one of the Candidate Aircraft***, Omega shall have the right to the remaining Candidate Aircraft by paying over to Jetran USD 500,000. [Emphasis supplied].

Consequently, the $500,000 dollar payment does ***not*** set a value of $500,000 for either one of the aircraft and cannot serve as a basis for the Court's finding. The Court's error apparently arose out of Jaffe's testimony[5] that directly contradicted the plain language of the Swap Agreement. It is noted that Jaffe's testimony is ineffectual to avoid the clear and unambiguous language of the document. *In re Managed Care Litigation*, 2010 WL 6532982, 3 (S.D.Fla. 2010); *Leslie Fay, Inc. v. Rich*, 478 F.Supp. 1109, 1113-1114 (S.D.N.Y. 1979)("If the intent is clear from the language of the document, "interpretation of the contract is a question of law, ... parol evidence is not admissible as an aid in interpretation").

---

sell 21092 for $8 million. [Tr. 82]. Eventually, according to Jaffe's testimony, Omega did in fact sell 20919 to the Government of Israel for $8 million. [Tr. 86].

[5] Jaffe's Testimony: "Q. But does that not put the value in this agreement of 21092 at $500,000? A. It does." Tr. 91. This testimony is flatly contradicted by the Swap Agreement, ¶ 6.

### (5) Manifest Error of Law in the Judgment

In addition to the mistakes of fact which arose out of defendants' faulty analysis, the Judgment contains a manifest error of law, to wit, it contains an award which lacks finality. In addition, the order discusses, but does not include as a specific ruling on plaintiff's entitlement to a "share of the net proceeds from the sale of 20919." Judgment, ¶ 14. Plaintiff submits that this ruling is fundamentally erroneous for the reasons discussed above. In addition, however, it is submitted that the entry of judgment on an event that may never occur is a manifest error of law.

The Court ruled that plaintiff is "entitled to a 3 percent commission of Jetran's share of the net proceeds from the sale of the 20919 Aircraft to the Government of Israel." Judgment, Section II. C., ¶14. The Court further held that "[t]hat amount shall become due within thirty days of the resolution of the lawsuit between Jetran and Omega Air regarding those proceeds." *Id. But no lawsuit has been filed.* Tr. 86-87. As stated by Jaffe, "…we're about to have another [lawsuit], I guess, with Omega because they're refusing to pay the 400. But we'll see." Tr. 87. Consequently there is no lawsuit between Jetran and Omega Air … and there may never be such a lawsuit. As a result, there can be no "final order" as to that issue.

A "final order" is an order that concludes the litigation on the merits of the case and "leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed.2d 911 (1945); *Sunstate Dairy and Food Products Co. L.P.*, 1992 WL 161138 (M.D.Fla. 1992). *See also* 15A Fed. Prac. & Proc. Juris §3909 (2d ed.) *In re Lundell*, 236 B.R. 720, 723 (9th Cir. BAP 1999) (Rule 54 does not allow the court to certify as final an order or judgment in which the damages were contingent on a future event).

Hence, because the Judgment is contingent on a future event that may never occur, there is no final order and entry of the judgment was a manifest error of law.

## *V. CONCLUSION*

Based on the foregoing discussion and authorities, plaintiff moves to open and amend "Section C. Valuation" of the Judgment pursuant to Rule 59(a)(2) based on a recalculation of the value of 21092 grounded on comparable data and sales, applying the calculated value of a fully modified aircraft as the basis for the percentage commission calculation, and awarding damages based on that recalculated value as of June 2, 2005, to wit, $8,000,000, together with prejudgment interest to be calculated as previously ruled by the Court.

### *Certification of Pre-filing Conference:*

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so.

/s/Carl H. Hoffman
Carl H. Hoffman

WHEREFORE, Plaintiff, Leonard Simkovitz, hereby moves the court for an order vacating its damages award in the Findings of Fact and Conclusions of Law and Judgment dated June 17, 2011, or in the alternative an order amending and/or vacating the Order so that the case may be further litigated, together with all other relief that this court deems just and appropriate.

DATED this 15th day of July, 2010.

/s/ Carl H. Hoffman
Carl H. Hoffman
chh@hoffhertz.com
HOFFMAN & HERTZIG, P.A.
901 Ponce de Leon Blvd., Suite 500
Coral Gables, Florida 33134
Telephone: 305-445-3100 x 104
Facsimile: 305-444-5656
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-21431-LENARD/TURNOFF

LEONARD SIMKOVITZ,            :

        Plaintiff,           :

v.
                                  :

JETRAN INTERNATIONAL, LTD., et al
                                  :

        Defendants.          :
_____:

## CERTIFICATE OF SERVICE

    I hereby certify that on July 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                    s/Carl H. Hoffman
                                    CARL H. HOFFMAN

## SERVICE LIST

LEONARD SIMKOVITZ v. JETRAN INTERNATIONAL, LTD., et al.
CASE NO. 10-21431-CIV-LENARD/TURNOFF
United States District Court, Southern District of Florida

Richard L. Richards, Esq.
rrichards@richpa.net
RICHARDS & ASSOCIATES
232 Andalusia Avenue, Suite 202
Coral Gables, FL 33134
Telephone: 305-448-2228
Facsimile: 305-449-2229
Attorney for Defendants, Jetran
International, Ltd. & Jetran, LLC
Served by CM/ECF Electronic Filing